FRED HOPENGARTEN *vs.* BOARD OF APPEALS OF LINCOLN. February 22, 1984. *Zoning,* Special permit. *Radio Antenna.*

Mr. Hopengarten, an attorney (the petitioner), obtained on April 8, 1981, from the town board of appeals (the board) a special permit to erect a noncommercial radio tower at the rear of his land (containing 57,847 square feet) in an R-1 zoning district in Lincoln. The permit contained conditions. Upon the present appeal the petitioner discusses only those numbered 7 and 8.[1] The board acted upon recommendations of the town's planning board that (no. 4) "[t]he permit be reviewed every three years" and (no. 5) that it "remain exclusively with the petitioner and . . . not [be] transferable nor run with the land." The board, in granting the permit, proceeded under G. L. c. 40A, § 9, as amended through St. 1980, c. 508, § 5, the first paragraph of which reads in part, "Zoning . . . by-laws shall provide for specific types of uses which shall only be permitted in specified districts upon the issuance of a special permit. Special permits may be issued only for uses which are in harmony with the general purpose and intent of the . . . by law, and shall be subject to general or

---

[1] Conditions numbered 7 and 8 read (in part):

"7. The special permit here granted shall terminate automatically on the date that Petitioner alienates the title he now holds to his property. . . .

8. Subject to condition no. 7 . . . [this] special permit . . . shall be for a period of three (3) years from the date of this decision. . . . [It] shall be renewed automatically for successive three-year periods provided that a written request for renewal is made to . . . [this] Board . . . not less than three (3) months prior to the expiration of the then-existing three-year period. Publication of notice of said request shall be made in the same manner as would be required for an original application for a special permit. . . . Said notice shall state that the renewal request will be granted automatically unless, prior to the expiration of the then-existing permit, a written objection to the renewal, stating . . . reasons . . . is received by the Board. In the event . . . [of] such an objection . . ., a hearing on the . . . renewal shall be held and shall proceed in a manner identical to the course of proceedings in connection with an original permit application."

specific provisions set forth therein; and such permits may also *impose conditions, safeguards and limitations on time or use*" (emphasis supplied).

The town's zoning by-law in § 6.2(f) provides that the board may grant a special permit for stated uses even in an R-1 district "with the written advice of the [p]lanning [b]oard in each case . . . . [including] (f) private, non-commercial radio . . . towers; provided that a permit to erect and maintain such a tower in connection with the operation of an amateur radio station shall not be denied unless the *safety of the public* will be endangered by such erection or maintenance . . ." (emphasis supplied). Section 13.1.2 of the by-law provided that height limitations in the by-law (ordinarily thirty-six feet in an R-1 district) "shall not apply to radio . . . towers, permits for which have been granted under [s]ection 6.2(f). . . ."

The board removed to the Superior Court the petitioner's complaint, filed in a District Court, seeking review of the board's conditions. A Superior Court judge, after a de novo hearing, made comprehensive findings warranted by the evidence and concluded that the tower "not only [will] meet minimum safety standards but will have a significant safety factor." Judgment was entered stating that the board's decision did not exceed its authority. The petitioner appealed.

1. The judge correctly ruled that condition no. 7, making the permit "personal to the" petitioner, was valid and appropriate. See *Maki* v. *Yarmouth*, 340 Mass. 207, 213 (1960). Condition no. 7 is consistent with G. L. c. 40A, § 9, and with the by-law. At the arguments, the petitioner objected that, if he were by deed to convert his individual title to a tenancy by the entirety with his wife (see G. L. c. 184, § 7, as amended through St. 1979, c. 239, § 1) or otherwise to provide for her to share in it, as e.g., by revocable trust, compare *Sullivan* v. *Burkin*, 390 Mass. 864 (1984), it would result in a termination of the special permit under condition no. 7. We concur with the concession by the town's counsel that condition no. 7, although somewhat confusing in its imprecise terms, compare *Shuman* v. *Aldermen of Newton*, 361 Mass. 758, 766-767 (1972), was intended to cause the permit to lapse only if the petitioner ceased to have a substantial ownership and use interest, direct or beneficial, in his present land.

2. Condition no. 8 was ruled correctly, on the basis of the evidence before the judge, to be an appropriate method of preserving an opportunity to the board (and to others with standing) to obtain, at least every three years, board review of the continuing safety (in actual use) of the metal tower, a structure which obviously may be subject to deterioration if not properly maintained and repaired. As to maintenance, a witness called by the petitioner recommended inspections of the tower, its bolts, connecting sections, and guy wires, twice a year for rust and to be sure "everything is safe." The board reasonably could have provided that the permit should expire at the end of the three year period, so that complete

reapplication would have been necessary. Condition no. 8 is much less drastic. "[T]he safety of the public," of course, under the present by-law, is the only consideration which the board may take into account in the circumstances of this permit in the event of an objection to its renewal. Such an objection may be based only on public safety grounds.

Chapter 40A, § 9, first par., expressly allows in special permits "limitations on time or use." If and when the by-law is amended, or if a renewal permit is denied for reasons other than the public safety, it will be soon enough to consider questions prematurely suggested by the petitioner (and by a largely inapposite brief of an amicus curiae) concerning conceivable (a) abuses of condition no. 8, or (b) board action based upon by-law amendments which may never take place. See as to questions discussed in the brief of the amicus curiae, *Sleeper* v. *Old King's Hy. Reg. Hist. Dist. Commn.*, 11 Mass. App. Ct. 571, 575-576 (1981).

3. The board did not discriminate against the petitioner merely because it began, with the petitioner's application, to impose (as compared with its action with respect to towers earlier erected in Lincoln) more adequate conditions to protect the public's safety in granting this permit to this petitioner. See *Middlesex & Boston St. Ry.* v. *Aldermen of Newton*, 371 Mass. 849, 852-853 (1977).

*Judgment affirmed.*

*Fred Hopengarten*, of the District of Columbia, pro se.

*Donald D. Cooper* (*Kenneth J. Mickiewicz* with him) for the defendant.

*Christopher D. Imlay*, of the District of Columbia, for The American Radio Relay League, Incorporated, amicus curiae, submitted a brief.

